IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| MELLIE DUDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:20cv105-MHT |
| | ) | (WO) |
| AMERICAN FAMILY CARE, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This suit under the Age Discrimination in Employment
Act, 29 U.S.C. § 621, also known as the ADEA, is before
the court on the motion of defendant American Family
Care, Inc. to dismiss plaintiff Mellie Dudley's complaint
and compel her to arbitrate her claim.  The court has
federal-question jurisdiction pursuant to 28 U.S.C.
§ 1331.

Dudley worked for many years at Montgomery locations
of American Family Care, a network of healthcare
facilities with clinics across the United States.  She
alleges that, near the end of her time at the company,

her co-workers began harassing and threatening her because of her age: She is either 77 or 79 years old. *See* Complaint (doc. no. 1) at ¶ 4 (seventy-seven); Decl. of Mellie Dudley (doc. no. 15-1) at ¶ 3 (seventy-nine). Dudley says she ultimately left the company in September 2018 because of this harassment.

In May 2018, after she started complaining of age discrimination to her supervisors, Dudley was asked to sign an agreement to arbitrate "any controversy, dispute or claim arising out of or relating to" her employment with American Family Care as a condition of remaining in her job. Arbitration Agreement (doc. no. 15-2) at 2; *see also* Mem. in Supp. Defs.' Motion to Dismiss (doc. no. 6) at 5. She signed the agreement, and the company now seeks to enforce it. For the reasons that follow, the court will grant the company's motion insofar as it seeks to compel arbitration. The arbitration agreement is enforceable, and Dudley must arbitrate her claim.

The Federal Arbitration Act requires a court to stay an action when it finds the suit to be subject to a valid

arbitration agreement. 9 U.S.C. § 3. American Family Care nonetheless moves to dismiss Dudley's complaint because the only claim presented in her complaint is subject to arbitration. *See* Mem. in Supp. Defs.' Motion to Dismiss (doc. no. 6) at 10-11. The cases the company cites to support this request show nothing more than that the district court has the power to dismiss rather than stay an action under these circumstances. The court declines to exercise that power. It will deny the motion insofar as the company seeks dismissal of this suit, and it will instead stay this action pending the arbitration of Dudley's claim.

## I.   LEGAL STANDARD

The Federal Arbitration Act instructs that arbitration agreements such as the one in this case are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has explained, the Act evinces "a liberal federal policy

3

favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The agreements may be "invalidated by 'generally applicable contract defenses'" under state contract law, but not by "defenses that apply only to arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

However, the United States Supreme Court and the Eleventh Circuit Court of Appeals have recognized one arbitration-specific defense that is relevant here. An arbitration agreement may be unenforceable when "the existence of large arbitration costs" would preclude a plaintiff from "effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79. 90 (2000). A party seeking to invalidate an agreement based on this "effective-vindication" defense bears the burden of presenting evidence that shows "(1) 'the amount of the

**4**

fees he is likely to incur;' and (2) 'his inability to pay those fees.'"  *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1291 (11th Cir. 2015) (quoting *Musnick v. King Motor Co.*, 325 F.3d 1255, 1259 (11th Cir. 2003)).  Merely showing a "[s]peculative fear of high fees" does not meet this requirement.  *Id.*

As the Supreme Court of Alabama has explained, "[t]he party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce."  *SCI Ala. Funeral Servs., LLC v. Hinton*, 260 So. 3d 34, 36-37 (Ala. 2018) (quoting *Cartwright v. Maitland*, 30 So. 3d 405, 408 (Ala. 2009)).  Once this showing is made, the burden shifts to the opposing party "to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question."  *Id.*

5

## II. DISCUSSION

Dudley neither contests that the arbitration agreement affects interstate commerce nor that it bars her suit if it is enforceable. She instead argues four reasons why the arbitration agreement should not be enforced: It constitutes an unconsented waiver of her Seventh Amendment jury trial right; it is unconscionable; it was signed under duress; and it "will be so gravely difficult and inconvenient" that she "will be deprived of her day in court." Response to Motion to Dismiss (doc. no. 15) at 3, 5, 11, 12. Although the latter defense is not styled as such, the court understands Dudley to be raising an effective-vindication argument based on the cost of arbitration.

Dudley's first three defenses all run headlong into contrary precedent. The Eleventh Circuit has rejected her argument that the Seventh Amendment presents a bar to the enforcement of arbitration agreements, following the reasoning of the Fifth Circuit Court of Appeals (among others) that the Constitution confers "only the

6

right to have a jury hear the case *once it is determined that the litigation should proceed before a court.*" *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1371-72 (11th Cir. 2005) (emphasis in original); *see also Stinson v. Am.'s Home Place, Inc.*, 108 F. Supp. 2d 1278, 1286 (M.D. Ala. 2000) (Thompson, J.) (also rejecting this argument).

Dudley offers largely identical allegations to support her unconscionability and duress arguments. To invalidate a contract on the ground of unconscionability, a party must show that the agreement was both procedurally and substantively unconscionable. *See SCI Ala. Funeral Servs.*, 260 So. 3d at 38-39. Dudley argues that the agreement was procedurally unconscionable because of the inequality of bargaining power and business sophistication between herself and American Family Care, a lack of time to review the agreement, and because she had no other means to secure employment. *See* Response to Motion to Dismiss (doc. no. 15) at 6-9. Similarly, she argues that she signed the agreement under

duress because she was not represented by counsel in signing the agreement; she had a brief period of time to review the agreement; and keeping her job depended on signing it.  *See* Complaint (doc. no. 1) at ¶ 19; Response to Motion to Dismiss (doc. no. 15) at 12.

It is unclear how long Dudley actually had to consider the agreement and whether she had the option to have a lawyer review it.  In her response to American Family Care's motion, she says that she was "given mere minutes to sign the agreement," Response to Motion to Dismiss (doc. no. 15) at 12, but she provides no further support for this time frame and does not mention it in her attached declaration, *see* Decl. of Mellie Dudley (doc. no. 15-1) ¶¶ 6, 11-12.  Elsewhere, she claims simply that she was "asked to sign" the contract "[w]ithin minutes of being given the documents," and that "[s]he was not informed that she should review the document in detail."  Response to Motion to Dismiss (doc. no. 15) at 8.  She claims at one point that she was not "allowed to have an attorney review the document," *id.*,

8

but she says in her declaration that she was just "not informed that I could contact an attorney to discuss the arbitration agreement," *see* Decl. of Mellie Dudley (doc. no. 15-1) at ¶ 11.

In any event, the facts she has alleged do not amount to procedural unconscionability, substantive unconscionability, or duress under Alabama law. The Supreme Court of Alabama has found a lack of procedural unconscionability in another sign-or-be-fired case when the employee alleged she was told, in her words, that she "could not leave the room with the form and that I either had to sign it then and there or lose my job." *Potts v. Baptist Health Sys., Inc.*, 853 So. 2d 194, 204-06 (Ala. 2002). This restriction of the employee's opportunity to review the arbitration agreement in *Potts* went well beyond what Dudley alleges here. The employee in *Potts* could not leave the room where she was handed the agreement without signing it; Dudley alleges just that she was "told that to keep my job, I needed to sign the paperwork" and was "not informed that I could contact an

**9**

attorney to discuss the arbitration agreement." Decl. of Mellie Dudley (doc. no. 15-1) at ¶¶ 6, 11. The Supreme Court of Alabama has elsewhere held that making an employee choose between signing a new contract or being terminated is not economic duress either. *See Clark v. Liberty Nat'l Life Ins. Co.*, 592 So. 2d 564, 567 (Ala. 1992).[1]

Dudley also argues that the arbitration agreement is substantively unconscionable because the agreement requires the employee to "bear the expense of his/her own legal counsel, if necessary." Arbitration Agreement (doc. no. 15-2) at 2; *see* Response to Motion to Dismiss (doc. no. 15) at 10-11. She maintains that this makes the agreement unconscionable because of the possibility that the parties would ultimately each have to bear their own attorneys' fees, notwithstanding the agreement's

───────────────

1. To the extent Dudley maintains that the agreement was also invalid because it involved no "additional consideration other than her continued employment," Complaint (doc. no. 1) at ¶ 19, the Alabama Supreme Court's decisions in *Potts* and *Clark* foreclose this argument as well.

provision granting the arbitrator power to award attorneys' fees. *See* Response to Motion to Dismiss (doc. no. 15) at 11.

A showing of substantive unconscionability requires that the terms of the contract be "grossly favorable" to one party over the other. *SCI Ala. Funeral Servs.*, 260 So. 3d at 39. The mere possibility that each side might have to bear its own attorneys' fees does not make the agreement grossly favorable to American Family Care. Indeed, the Eleventh Circuit has expressly and repeatedly rejected the argument that an arbitration agreement is made unenforceable simply because it provides a different scheme for attorneys' fees than would be available if the plaintiff's lawsuit proceeded in court. *See Summers v. Dillard's, Inc.*, 351 F.3d 1100, 1101 (11th Cir. 2003) (enforcing arbitration of claims under the ADEA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, when agreement allowed fee recovery "only if the plaintiff completely won at arbitration"); *Musnick*, 325 F.3d at 1259 (holding that the plaintiff could be

compelled to arbitrate his Title VII claim in spite of the arbitration agreement's "loser pays" provision).

Finally, the court turns to Dudley's effective-vindication defense. As discussed above, this defense requires a party seeking to invalidate an arbitration agreement to show "(1) 'the amount of the fees he is likely to incur;' and (2) 'his inability to pay those fees.'" *Escobar*, 805 F.3d at 1291 (quoting *Musnick*, 325 F.3d at 1259).

Dudley bases her effective-vindication defense on a provision of the arbitration agreement that "[American Family Care] and Employee shall share equally all of the administrative costs associated with the filing and prosecution of the Arbitration." Arbitration Agreement (doc. no. 15-2) at 2; Response to Motion to Dismiss (doc. no. 15) at 11-12. She argues that she will be precluded from vindicating her rights because she "will have trouble paying" these fees, which she alleges will "include travel for the arbitrator, meals, travel for

Mellie Dudley and her attorneys, and the arbitrator's fee." Response to Motion to Dismiss (doc. no. 15) at 12.

The Eleventh Circuit has held that "[t]he mere existence of a cost-splitting clause in an arbitration agreement does not satisfy a plaintiff's burden" to show the fees he or she is likely to incur, the first step of the effective-vindication inquiry. *Escobar*, 805 F.3d at 1291. Dudley presents little other evidence to demonstrate specifically what costs she would incur if she sought to arbitrate her case. Her bare claim that arbitration could cost up to $ 2,000 per day "[b]ased on research," Response to Motion to Dismiss (doc. no. 15) at 12, is far from sufficient to meet her burden.

Moreover, a careful review of the terms of the arbitration agreement and the underlying fee schedule shows Dudley's fear that she will accrue half of all arbitration expenses to be misplaced. The arbitration agreement does not provide that all expenses associated with arbitration will be borne equally by the parties. It provides specifically that the parties will share

13

equally the "administrative costs" involved in the arbitration. The fee schedule of the American Arbitration Association (AAA), with whom the arbitration will take place under the parties' agreement, exempts arbitrator compensation from the administrative costs involved in an arbitration. *See* AAA Fee Schedule (doc. no. 15-4) at 3 ("Arbitrator compensation is not included as part of the administrative fees charged by the AAA."). Arbitrator expenses such as travel and meals are similarly separated from administrative fees and are borne by the employer under the AAA's rules. *Id.*

The AAA's fee schedule also provides that the component of the filing fee borne by the individual--a significant part of the AAA's "administrative fees"--is capped at $ 300, and the schedule appears to allow contrary clauses in an arbitration agreement only to lower that cap, not to raise it. *See* AAA Fee Schedule (doc. no. 15-4) at 2. Finally, the AAA's rules allow the arbitrator to reduce the fees imposed on a party in the event of "extreme hardship." AAA Employment Arbitration

14

Rules and Mediation Procedures Rule 43; *see also Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028-29 (11th Cir. 2003) (denying an effective-vindication defense in part because of an AAA rule allowing reduction of fees in cases of extreme hardship). All told, it appears the actual fees that Dudley will have to pay under the parties' agreement fall considerably below what she argues they would be, and they may be reduced further by the arbitrator if the fees would nonetheless be a hardship to her.

As to the evidence of Dudley's capacity to pay these fees, the Eleventh Circuit, in *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543 (11th Cir. 2016), has rejected an effective-vindication defense to an arbitration clause with a cost-splitting provision--even after it found that the plaintiff would have to pay $ 2,000 to begin arbitration--because the plaintiff's affidavit that he had trouble finding work and "[did] not have money to pay for an arbitrator" was inadequate to show his inability to pay. *Id.* at 554-55. The costs that the *Suazo*

15

plaintiff was due to accrue considerably outstripped what
it appears Dudley will have to pay as the court interprets
the arbitration agreement here.   And Dudley's evidence
of inability to pay is less substantial than what the
*Suazo* plaintiff offered.   She provides just a single
paragraph of evidence on this issue in her declaration,
in which she states that her current income is "about 1/3
less than what I was making at [American Family Care],"
and that she "had difficulty obtaining the funds to cover
the $400 filing [fee] for the USDC."   Decl. of Mellie
Dudley (doc. no. 15-1) at ¶ 13.[2]   This is not enough to
meet her burden of showing that it would foreclose her
claim to have to split with American Family Care just the
administrative fees associated with arbitration.   Based
on the court's understanding of the agreement's cost-
splitting provision, it cannot find that arbitration will

_____

2.   The court reminds Dudley's counsel that the
Alabama Rules of Professional Conduct allow attorneys to
advance their clients' filing fees in cases of contingent
representation like this one, and that the repayment of
such fees "may be contingent on the outcome of the
matter."   Ala. Rules of Pro. Conduct r. 1.8(e)(1).

impose on Dudley such unmanageable costs that enforcing the agreement would preclude her from vindicating her rights under the Age Discrimination in Employment Act. As such, her effective-vindication defense does not succeed.

* * *

Accordingly, it is ORDERED that:

(1) Defendant American Family Care's motion to dismiss and compel arbitration (doc. no. 5) is granted in part and denied in part.  The motion is granted insofar as it seeks to compel arbitration, and it is denied insofar as it seeks dismissal of this suit.

(2) This action is stayed pending the resolution of arbitration under the terms of the agreement signed by the parties in this case.

(3) On or before the second Monday in January and July of each year, counsel for the parties are to file a report as to the status of the arbitration proceedings.

   (4) The clerk of the court is to close this case
administratively.

   DONE, this the 4th day of November, 2020.

                              /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE